Good morning. Good morning. May it please the Court. We challenge the opinion of the trial court granting summary judgment without a hearing in this matter involving a disability policy on two grounds. First, we believe the Court misinterpreted the law of Maryland with regard to when in circumstances like this where there is a continuing obligation on the part of an insurance company to perform some act in determining when the statute of limitations of three years begins to run. We think there is case law, very analogous case law, in point in Maryland that would apply to this case contrary to what the Court decided. We secondly challenge because the Court really decided that there were two periods he had to do with. One period he said was barred by the statute of limitations. The other period he said was barred by the fact that the insured conditioned his attendance at a so-called, I'm always interested that they call these things independent medical evaluations, but that the insured conditioned his appearance at an IME evaluation by asking the insurance company to bring itself current in the benefits that it owed at that point and had not paid. As I know the Court knows, this is a case... Counsel, let me ask you, if the Court were to conclude, just assume this for purposes of argument, that the failure to attend the medical examination was a breach that terminated your client's rights under the insurance contract, would that move to the statute of limitations inquiry? Not if... No, I don't think it would move to the statute of limitations inquiry if the statute hadn't run yet. The benefits at issue, which have never been paid before the insurance company requested the IME would not be barred if the vigilant case applied. I don't know if I'm being clear there. Well, if... In other words... No, go ahead. In other words, the Court, I'm sorry, the insurance company did not ask for the IME until a number of months after they stopped paying benefits, not saying that they weren't going to ever do it, but just they stopped. And then there was a period of time. If that period wasn't barred by the statute, it would still be an active claim, regardless of whether the IME should have been attended and therefore breached the contract, because it wasn't asked for until after these benefits weren't paid. Right. I don't know if I'm... Well, I'm trying to... You've got moving dates here, but as I understand the record, the complaint was filed July 27, 2011, which gives you a three-year look-back period to July 27, 2008. Yes, sir. And the medical exam was scheduled a month or six weeks before that. Yes, sir. So that's the point of my question. If there was a breach that cut off the plaintiff's rights in June of 2008 and the suit was filed more than three years after that, that's why I asked the question of whether the IME issue, if resolved in favor of the insurance company, mooted the statute of limitations argument. And my answer is that if the claim is not barred by the statute of limitations, a strict three-year statute, if there's this continuing events theory that was articulated in the Vigilant case that is applicable, the insurance company has not paid benefits as of September 2007. They did not ask for an IME until 2008. So that period of benefits would still be up for discussion, if you will, and therefore the question of the statute of limitations and what the applicable law is would have to be decided. I think it's our position that if you owe benefits for a period, let's say for all of 2007 to make it easy, and then you ask for an IME in the middle of 2008 and the insured conditions that on, wait a minute, you're $25,000 in arrears. I'll go for the IME, but bring yourself to date. Then you still have a limitations issue as to those benefits beforehand. If this court were to decide, as the trial judge did, that the conditioning of an IME was by law unreasonable when the insured says, bring yourself to date, I'll go for an IME, which is what Dr. Curry did. I don't know if I'm clear yet, but the limitations question still is at issue with regard to those benefits. That's why the trial court had to decide this sort of in two parts. I am sure the court is familiar with the many, many documents back and forth. Dr. Curry sustained an injury while he was working. He had an operation for that injury. He provided information from his operating surgeon that he had developed as a result of the injury arachnoiditis, which is an inflammation of the arachnoid. It's a very, very painful disease. It's an inflammation of the arachnoid membrane, which coats both the spinal cord and the brain. He was determined to have perineural fibrosis, which is scarring of the perineural spaces in the spinal cord. And his treating physician said about a year later that he was unable to work and likely would continue to be unable to work. His rehabilitation specialist said in 2004 and in 2005 and in 2006 and in 2007 that he was unable to fulfill the substantial and material activities of being a chiropractor. Now, he had what's called an own-op or own-occupation policy. It doesn't mean he couldn't stand here. It doesn't mean he couldn't walk around. It doesn't even mean he could snip branches. They had a video of him cutting some branches on a tree. What it means is if the insured can show that he cannot do the substantial and material work that a chiropractor is supposed to do, stand up and physically manipulate people's bodies eight hours a day, then the insurance applies to provide benefits. He, after the operation and after the diagnosis, applied for benefits, and he began receiving them. But, and if you look at, again, this is not an unusual circumstance. If you look at some of the other cases that have been decided in this area, the insurance company did it in what I would call fits and starts. They'd pay him, then they'd say, wait a minute. We know you filled out this form. We have your attending physician's certificate. By the way, the policy said you don't have to keep seeing a physician. If your condition is permanent, it's not going to get any better, which is the information that was in the reports that they had, they, the insurance company, had. You don't have to continue to see a physician. Well, you filled out your attending physician report, but you didn't do your conditional benefits report. Then he'd do that. Well, you've done your conditional benefits report, but you haven't signed an authorization so that we can get your Social Security records. Well, he had. He signed it with the first application that he filed. Well, wait a minute. They don't usually accept that. Well, okay, we'll pay you some. Now, wait a minute. We still haven't got your Social Security records. We're not going to pay you yet. But we're not denying your claim. They said that on any number of occasions. And, indeed, they made a substantial payment of $12,000 after the IME was requested, and Dr. Curry conditioned going to that IME based on them bringing themselves current. He's never denied the agreement to go to an IME. Simply, he said, I'll go to an IME, bring yourself current, make this a prospective arrangement. The vigilant case is precisely in point. Admittedly, it deals with a duty to defend in an indemnity policy. But what the court said there was, even though the insurance company refused to defend the lawsuit four years earlier, the fact that it had a continuing obligation, I say, like a disability policy, a continuing obligation to defend the case meant that the three years didn't start. Even though the insured could have brought a declaratory judgment action, even though I presume the insured could have brought an action for the attorney's fees, he had expended defending the case to that date. The statute didn't start until the duty to defend was over. In this case, the insurance company repeatedly told Dr. Curry, your claim is not closed, your claim is still open. They say we are suspending your benefits, not denying your benefits. They didn't do that until well after the three-year period, looking back from the date of filing, occurred. With regard to the question of whether or not it is reasonable for an insured to condition appearing at an IME on the insurance company bringing itself current, I suggest it's a jury question. The Smart v. State Farm case in Maryland says that any refusal or conditioning in the Smart v. State Farm case, the lady didn't refuse, she conditioned appearing at an IME in Washington, D.C., on the agreement of Dr. Bruce Ammerman to come to Maryland and testify. You're not open to subpoena in D.C. And I believe and suggest to the court that the trial court erred in saying that no reasonable jury could conclude that when you hadn't been paid $22,000 under a policy that you were entitled to, you couldn't reasonably say, tell you what, I'll go for this IME, but pay me first what you owe me. Well, why isn't that payment a breach? And why doesn't the initial refusal to pay trigger the statute in this case? You pointed out the Vigilant case, but that had to do with a rendering of services. And this is simple, you didn't pay me. And if that's the case, then the date of the breach should be from the date of first nonpayment. Well, because I think that the payment of disability benefits and the payment of services under a continuing obligation of the insurance company are indistinguishable in the concept. In the concept that if the obligation continues, you don't have to file suit until, Your Honor, three years from the time that the insurance company either no longer has the obligation or says, we say now that there will be no more benefits. They never said that until well within the three-year period. I think that's my original, well, I've got 28 seconds. But that's what I have to say for the time being. Thank you. And counsel, just for the future, when the red light comes on, the seconds you see is the time that's eating up in your rebuttal time. It's not a remaining time. I know some lawyers think that. But once it turns red, it starts counting negative to you. We'll talk later about that. When you look down and say I have 28 seconds, that meant 28 seconds had eaten up into your seven minutes you reserved. But we'll talk about that. I just want to get that housekeeping. That's why you have to stop when it's red, or is that your peril? Go ahead. Thank you. May it please the Court, Jason Walters for Trustmark Insurance Company, the Continental Insurance Company. Mr. Walters, may I? I want to ask you a question about diversity, jurisdiction, and the amount in controversy here. Math is not our strong suit, which is why at least I'm sitting up here, as opposed to doing high-level math. But this policy wasn't for an inordinate amount of money. I think it was $1,000 a month plus a $500 Social Security Rider of some kind. And the cases are clear that the date of the filing of the lawsuit stops the accrual amount for damages. Is there any question that there's more than $75,000 in dispute here? Your Honor, having litigated this case and been to and seen, I think there was two mediations, I can assure you that the amount of controversy is satisfied. And if I recollect correctly, and I believe I have a copy of the complaint in the record, I believe that more than $1 million was. Well, that was the claim, but I don't see how you get to that. I think it was $1.5 million was the ad damnum, but that seems a little bit out of whack. What's your estimate of the amount in controversy at the time that the complaint was filed? Well, Your Honor, when looking at the amount in controversy, we have to consider what the plaintiff seeks to recover, even if that amount is unreasonable. We believe that the plaintiff isn't entitled to recover anything in this case. But the plaintiff contends, and I assure you, has made it very clear throughout this litigation that he is entitled to recover a great deal of money. And that's one of the reasons that we're here and that this case was litigated as long as it was. And I will promise the court that the plaintiff is seeking well in excess of $75,000. I would also note that the policy benefits in issue are $1,000 per month base, but then there was a COLA rider, and that significantly increased the monthly benefit, plus the social insurance substitute benefit, which was another $500 a month, which was also... Well, I think I came to that same math. I just wanted to be sure that I hadn't miscalculated. Certainly. There are two separate and independent reasons, overriding reasons, why this court should affirm the summary judgment ruling of the district court. The first is that the claim is time-barred. The second is that the plaintiff, Dr. Curry, failed to comply with two separate conditions precedent to the payment of benefits. And for each of those two reasons, independently, his claims also fail. First, with respect to the statute of limitations issue, it's really two issues. The first issue is when did the claim accrue? The second issue is does Maryland recognize some sort of continuing harm or continuing injury exception to that statute of limitations? I'll take the accrual issue first. Before you even get to that, why should this not be a matter for the Maryland Court of Appeals to decide, as we suggested in our notice? A couple of reasons, Your Honor. First and foremost, and I'll get to this in a minute, but there are two other grounds on which this court can affirm the summary judgment ruling without even getting to the statute of limitations. And so, worst-case scenario, one of those two grounds would apply. The second reason is because this doesn't involve an arcane issue of Maryland law. This is a breach of contract case. There's one claim for breach of contract, and the issue in this case with respect to accrual, there are dozens, if not hundreds, of Maryland cases that address when a breach of contract cause of action accrues. In fact, if you look at the briefs of both Dr. Curry and the defendants, they both cite the same rule. A cause of action for breach of contract accrues when the plaintiff knows or should have known of the wrong or of the breach. We cite almost the same rule in both cases. We disagree a little bit about how that rule should be applied. But it doesn't change the fact that we know what the law is. The only thing left to do is apply the law to this case. And that's something that this court, as many other courts of appeal have done in similar situations, has ample authority to do. But do we have a case where you're dealing with a series of recurring benefits payments and what the accrual date is for each of those payments? In the McBride case, which we cite in our brief, that case involves, from the Maryland Court of Appeals, it does not involve a disability policy, but it interprets the exact same statute of limitations, Section 5-101. Three-year statute of limitations, same statute. And what that court, and the situation in that case was, we had wrongful conduct at one point in time, but then there were these continuing ill effects from that conduct that flowed, and the harm was continuing and flowed over a number of years. And I actually have the McBride case right here. And the McBride case rejected the very argument asserted by Dr. Curry and is one of the reasons this court should not certify this to the Maryland Court of Appeals. The court said, we are not persuaded by this argument, as her complaints are merely the continuing ill effects from the original violation and not a series of acts or course of conduct that would delay the accrual of a cause of action to a later date. It's squarely on point, applying the same statute of limitations. It cites an earlier Duke case. And this gets back to the point that a couple of your honors alluded to just a moment ago. The plaintiff in this case is trying to have his cake and eat it too. He claims he didn't have to submit to the IME because Trustmark had breached the contract and not paid his benefits. But then he contends that for statute of limitations purposes, Trustmark didn't breach the contract back then. Trustmark breached the contract later on at some point in time. Never mind the fact that he contends he was relieved from the obligation of attending the IME. What's clear in this case is that the plaintiff believed his contract was breached long before July 27, 2008, which was three years before this suit was filed. He sent three letters to the CEO of Trustmark corresponding with the claims department was not good enough. And he specifically stated they are breaching the contract. Trustmark is breaching the contract, is in arrears of his contractual obligations. We cite these letters at length. And here's what's really compelling. Not only did he cite his attorney on these letters, in April of 2008, Trustmark finally said, you're not entitled to benefits because you haven't submitted proof of loss. You have to go back to paying premiums again. This policy had a waiver of premium provision like a lot of these policies do so that if you're covered, you don't have to pay the premiums. He had to send in premium payments in April of 2008. So what you have to look at under Maryland law, the law that both of us agree applies, is when does the breach of contract claim accrue? It accrues at the time of the breach. It accrues when there's duty, breach, and damages, the three elements of the breach of contract. Plaintiff cannot legitimately contend that he could not have brought a lawsuit before July 27, 2008. The benefits had been terminated. He had to resume making premium payments. He knew about it. There's lengthy correspondence in the record where he's writing to the CEO of the company talking about how his contract has been breached. In the third letter, which was more than three years before this lawsuit was filed, he said, this is my third and final letter. Now, there's just... When do you say the statute of limitations began to run and why? The statute of limitations began to run when Trustmark first discontinued benefit payments in June of 2007. At the very latest... Well, I mean, he characterized that as a suspension of benefits. Is that the same as a breach? When the benefits were terminated and Trustmark made it clear why they were terminated, they were terminated because we want more proof of loss. When Trustmark discontinued benefits, it had not received a claimant statement from Dr. Curry in one and a half years. It had not received an attending physician statement for two years. For months, Trustmark sent... And they're all in the record. Trustmark sent letter after letter after letter after letter after letter, basically pleading with Dr. Curry to submit the simple... It's basically a two-page form. One he fills out and one his doctor fills out. Please send this in so we have the information to confirm that you're still entitled to benefits. Okay. So what was that date again? June 2006 is when the benefits stopped. 2006? Excuse me, 2007.  He didn't get paid through September of 2007 at all. I'm sorry? Didn't he get paid through sometime in September of 2007? This is what happened. They stopped his benefits then. Then he sent in an attending physician statement and Trustmark said, okay, we've got the attending physician statement. We haven't had one of those in two years, but we need your claimant statement. That has the information about what your daily activities are, what do you do every day and that kind of thing. And they said, since you sent in the attending physician statement, we'll pay one more month of benefits. And then later on a similar event happened. And then he finally said in March of 2000, April 2008, excuse me, that he hadn't been to see his doctor, so he couldn't provide an updated attending physician statement. That's when Trustmark said, okay, let's do an IME. While we're scheduling the IME, we will pay you one additional month of benefits, which will be through September 27, 2007. And so that's why it said now that the benefits continue through 2000. When Trustmark made these one-month payments, how much in arrears were you? I know you don't concede it's arrears, but let's call it arrears for the sake of discussion. How many months were you in arrears? Trustmark was current all the way through June 2007. That's when it said we can't pay more benefits unless you provide this information. Then it ultimately paid three more months of benefits. It depends on what date you're talking about in terms of how many months. But, for example, in April of 2008, the benefits would have been unpaid dating back to September of 2007. Should it be a monthly or another month in 08? In 08, we paid one additional, Trustmark paid one additional month as a courtesy while the IME was being scheduled. That's what I'm talking about. You wanted IME. You know you have several months in arrears, and you give him one month? What was that? You playing games with him? No, Your Honor. The reason for it, the whole purpose for the IME, is to determine whether he's entitled to those benefits. I understand that, but were you using the money to manipulate the circumstance of getting the IME? Oh, not at all. Why didn't you give him his full arrears then? Trustmark didn't have to pay him the month. I know you didn't, but why didn't you give him at all? Why were you just giving him like a little tease? It was a courtesy, Your Honor. Trust me, when you see this record, it's really alarming. I've seen the record. Nancy Sullivan, the claims administrator, actually gave Dr. Curry her cell phone number and said, Call me on nights and weekends. Aren't you doing the same thing that he did? He said, listen, you want an IME, show me the money. You're doing the same. Okay, we'll give you one month to encourage you to do it. You're both sort of playing. It's the same thing. You're just sort of going around in circles. Why wouldn't you say, okay, listen, we're here now for an IME. We know how many months we're in arrears. Let's pay those months. And then it puts you in a position you're now refusing. Now you're in a position, like his, you're saying, oh, you can't hold us hostage for the arrears. He said, well, you can't hold me hostage for the IME. They're giving me one month. It's the same thing. You're both sort of, you know, sort of recrimination, you know, divorce law. Neither one of you can get divorced. Well, Your Honor, this is, I think, an incredibly important point for me to make, and I haven't made it clear. The reason for the delay was not to schedule an IME. The reason was because he still had not provided the proof of loss. The simple forms that the insurance company requires and is required by the terms of the policy. As I indicated. The physician told you it was permanent. The physician who was, let me back up and put it in this context, because I think this context is important with respect to the permanent disability. He cited, and this is on page 1080 of the record, he cited to this opinion from the surgeon. What the surgeon said was, Dr. Curry has not seen any improvement over the last couple of months and may end up with permanent disability because of this. This is what opposing counsel just cited. And he said, I believe that this will cause him some permanent disability. We don't know. What date is that? This is dated October 21st, 2004. Why did you get an IME then? At this point in time, we're paying benefits. I said, why didn't you get an IME? Once you get any indication of permanency, that's the time for an IME, isn't it? At that time, he was still submitting the claim forms. He was still submitting letters from his doctors advising Trustmark of what his condition was. But you knew right then there was going to be some percentage of permanency back in 2004. And you didn't ask for an IME then. And so what Trustmark did was it consulted its physicians, multiple physicians. And Dr. Curry was seeing a pain specialist. Trustmark consulted board-certified orthopedists. And what they said was, and what they recommended is, continue to monitor this situation. The surgery that Dr. Curry had was a microdiscectomy. That's the same surgery Tiger Woods had, Tony Romo had. Everybody in this case, Dr. Curry, his surgeon, the prognosis was a full recovery. It was expected he would be back to work in months, if not weeks. And so that's why Trustmark's physicians recommended that Trustmark continue to monitor his progress in a situation. It's not like Trustmark was asking for something every month. Like I said, it had been a year and a half. It had been two years since it had anything, since Trustmark received anything from his physician. All Trustmark was trying to do was to ensure that he was still entitled to continue receiving benefits. And here's another important point. This policy has a residual disability benefit. So it's not an all or nothing situation. If, as discovery ultimately revealed, he is able to do some work. For example, every former employee we talked to testified under oath that he performed treatments on them and other people. So if he's able to do some work under this residual disability benefit provision, he doesn't get the entire amount of benefits. He gets a proportional amount. That's one of the reasons that it's so important that Trustmark receive this ongoing proof of loss. And this incidentally has been something that has been recognized since the Supreme Court reviewed this issue all the way back in 1935 in the Mobley decision. This is what the Supreme Court said. This is involving a disability provision. The insurer's promise to pay monthly benefits was conditioned on two events. The insurer's disability and the specified proof. Its obligation was not an unqualified one to pay or to pay on the mere occurrence of disability, but only after proof of that fact. And so in my remaining moments, Your Honor, I'd just like to... Tell us about what your view is on the effect of the independent medical exam and the failure of the plaintiff to take the exam. How does that play into the case? Particularly, how does that relate to the statute of limitations? And that gets back to this point that the plaintiff is trying to really have his cake and eat it too here. Because the claim clearly accrued prior, excuse me, more than three years before this lawsuit was filed. If the court does find that he should have attended the IME and did not, then naturally any claim prior to the IME would be time barred for a couple of reasons. First of all, because the breach accrued, he could have brought suit, you know, before the IME was even conducted, if he believed the breach had occurred as he said in his correspondence to the company. He could have brought suit then and so the claims accrued and the statute of limitations is run. But it's also important to note that he contends that he shouldn't have been required to go to the IME because his benefits had not been paid. The court will not find any letter in the record where prior to the IME that was scheduled, the plaintiff said, or Dr. Curry said, I will go to the IME if you pay my back benefits. It wasn't until months later that he backed up and made that promise. This is just something that's been created after the fact, after he just refused to go to the IME. Then there's no allegation that this IME was unreasonable, that the orthopedist that he was going to go see was not qualified, that the location was unreasonable. It was a reasonable IME. It was the first one Trustmark had requested, so it wasn't too many of them. The circumstances were reasonable. And under Maryland law, under the Hunt case that we cite in our brief,  the payment of benefits can't then also be a condition precedent to an IME. A lot of these disability policies involve, I have another case right now where the disability benefit is $18,000 a month. Let's take a situation, hypothetically, where you have a physician who's covered under a policy like this and he waits a year to submit a claim, which happens all the time. And then the insurance company decides to take an IME. If this court were to enter a finding that payment of benefits is a condition precedent to an IME, not only would it be contrary to the Hunt case in Maryland law, but it would create a situation to where the insurance company may have to pay $200,000 or $300,000 just to get an IME. And then if the IME reveals that the claim is bogus, the insurance company is faced with having to file another lawsuit to go try to get that money back. That's the holding in the Fernandez case that examined this specific issue. And the court said it makes no sense to pay the benefits first and do the IME second. Do the IME first, determine if he's entitled to the benefits, and then if so, then you pay the benefits. And in my final moments, I would just also emphasize with respect to the statute of limitations question, this is a different situation than where a claim is submitted for the first time and a claimant is waiting to get a decision from the insurance company. Here the benefits stopped. The insured knew the benefits stopped. The insured wrote letters to the company saying you're breaching my contract. He copied his attorney. Then he had to make premium payments. The evidence is overwhelming that the claim is time barred. And for those reasons, Your Honors, we respectfully request that the court affirm the summary judgment ruling. Thank you. Mr. Atkins, do you have some rebuttal time? Just a brief moment. So that we're clear. As of the time the insurance company asked for the IME, they had not shown Dr. Curry the money. Indeed, they made a $12,000 payment, which wasn't enough. In August of 2008, after they asked months earlier for the IME, which he conditioned on showing up. What they also had not paid, and I wish I could relate from the record, when they made that last payment, the extra month, that was a year, 10 months earlier, Your Honor, Judge Gregory. That wasn't like we'll give you an extra month if you go for an IME in 2008 when they asked it. That was we'll pay you for an extra month a year ago or 10 months ago if you go for an IME. So they were chronically delinquent on this claim. As evidenced by their own admission, when in August they sent a check for $12,000, when they wrote and said, we are denying, denying, this is the first time they've said this, your claim, not suspending, denying your claim, we are sending a check under separate cover. That's substantially after he had made going to an IME contingent on them bringing themselves to date. Second, in your complaint, paragraph 13, you allege that since September 25, 2007, defendants have refused to pay Dr. Curry his monthly disability benefits and that the action of the defendants constitute a breach of contract. That suggests that you considered the breach to have occurred in September 2007, meaning that you had three years from that date to file your lawsuit. I don't think under Maryland law, with all respect, Judge Diaz, that that does mean that. I think under Maryland law, where there is a continuing obligation, and I don't with all due respect distinguish the duty to provide payment to a lawyer to defend someone who has been sued in an indemnity policy situation. I don't distinguish that. I don't think the Maryland court would distinguish that from the obligation to pay an individual who has an insurance policy if he becomes disabled. And there is no question that Dr. Curry knew he wasn't getting the benefits. There is no question, indeed, that that wasn't a failure to honor the contract and a breach. But Maryland law, according to the vigilant case, says there is a common law exception that is called the continuation of events theory. And in the duty to defend case, that is vigilant, they said, of course the insured knew when they said, oh, you're supposed to hire us a lawyer? Hire us a lawyer. And the insurance company first said yes, and then a few months later they said no. We're not going to do it. We're not going to hire you a lawyer. Of course they knew the contract had been breached at that point. Of course they knew they had the right to file a declaratory judgment action. I say they probably could have filed, you know, they went out and hired their own lawyer in that vigilant case. They had to pay him or her. Of course they knew they had been injured because they had to pay them. But what the court said in that case was, we are not going to start the three-year period, even though you knew, we are not going to start the three-year period running until the final obligation is done. And in the vigilant case, that's when the litigation ended, is what they said. They said, look, we know you could have filed a DJ. We know you could have filed something else early on. Okay? And they discuss all the law in Maryland. There's a case called. Well, when would the final obligation be done in this case? This is a continuing policy to provide. I mean, you have an obligation to provide benefits as long as your client is disabled. Right. When they said, we have made a determination that we're not going to pay you anymore as of 10 months ago. That's what they said. Not now. We'll give you an extra month now. We have determined. I mean, I think, in a sense, I acknowledge this is Jay Singleton's tale. The final obligation ends when the insured is no longer permanently disabled. Everything in this record says he was. And this doesn't directly answer your question. I think I just did. I hope I did. But there is an attending physician's report not two and a half years earlier in this record. It's at page both 1128, 1129, and I'm not sure. Well, 1129 anyway, in July of 2007 from the treating physician. In June of 2006, he said he needs to go to a pain practitioner because of his inability to perform the physical requirements of his profession. His treating doctor, a rehabilitation specialist, had said in the visit before that, this constellation of problems that are worsening has led me to the conclusion that he is unable to continue the duties of his profession as a chiropractor. So where this notion comes that there was no proof that he was permanently disabled, I respectfully submit that at the very least it's a jury question. But to answer your question, he knew that they weren't paying him. And to the extent that's a breach, I guess what I'm really saying is that the classic discovery rule that you might apply in a malpractice case, when did you know there might be a cause of action? Because of what they said in the vigilant case, and they cited an older case that we have in our brief, Washington or something. Because of that continuing event rule, in a situation where they are obligated to continue paying him, this statute doesn't start to run. So I say in this case, it is when they said, finally, I think this is really in October when they denied his appeal of 08, we're not paying you anymore. Thank you very much. Unless you have any more questions, that's what I have to say. Thank you very much, counsel. Yes, sir.
judges: Roger L. Gregory, G. Steven Agee, Albert Diaz